UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JENNIFER D.,                                                          Case No. 3:24-cv-01659-AR

                    Plaintiff,                                        OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

_____

**ARMISTEAD, United States Magistrate Judge**

        In this judicial review of the Commissioner's final decision denying Social Security

benefits, Jennifer D. (last name omitted for privacy) challenges the Administrative Law Judge's

findings regarding her subjective symptom testimony and the medical opinion of Dr. Cara

Barber. (Pl.'s Br. at 3-24.) As explained below, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.[1]

## PROCEDURAL BACKGROUND

Plaintiff applied for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income (SSI) in July 2020, alleging disability onset as of July 1, 2020. (Tr. 16.) Her application was denied, and plaintiff requested, and was granted, a hearing before an ALJ. (Tr. 40-64.) On November 28, 2023, the ALJ issued a decision finding plaintiff was not disabled. (Tr. 16-31.) Plaintiff requested review of the hearing decision, which the Appeals Council denied in July 2024. (Tr. 250-51, 1-7.) Plaintiff now seeks review of that decision.

## ALJ'S DECISION

In denying plaintiff's applications for DIB and SSI, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity (SGA) since the July 2020 alleged onset date. (Tr. 18.) At step two, the ALJ determined that plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, carpal tunnel syndrome, migraines, and obesity. (Tr. 18.) At step three,

---

[1]    This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]    To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

the ALJ determined that plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of any listed impairment. (Tr. 21.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 404.1545, the ALJ determined that she had the ability to perform light work with these added limitations:

> Occasionally climb ramps and stairs; should not climb ladders/ropes/scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; can frequently handle and finger with the bilateral upper extremities; can occasionally feel with the right upper extremity; can occasionally reach overhead with the bilateral upper extremities; and should have no exposure to hazards (such as unprotected heights and exposed moving mechanical parts). (Tr. 21.)

At step four, the ALJ determined that plaintiff can perform her past relevant work as a server (informal). (Tr. 29.) Considering her RFC, the ALJ also found at step five that jobs existed in significant numbers in the national economy that plaintiff could perform, including such representative occupations as cafeteria attendant, housekeeping clearer, and small products assembler I. (Tr. 30-31.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the

evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

A.    ***Subjective Symptom Testimony***

Determining the credibility of a claimant's symptom testimony requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 404.1529. At the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015*; Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for discounting her subjective symptom testimony. (Pl. Br. at 3-22.) That is, plaintiff contends that the ALJ failed to consider plaintiff's allegations of her migraines, bilateral carpal tunnel

syndrome, and her musculoskeletal impairments and failed to provide reasoning to support her findings. Plaintiff is correct.

### 1.    Inconsistency with Objective Medical Evidence

The ALJ improperly discounted plaintiff's testimony about the limiting effects of her physical health impairments. (Tr. 23-26.) The ALJ summarized parts of the medical record, attempting to show inconsistency between the record and plaintiff's testimony regarding her severe neck and back pain, carpal tunnel syndrome, and migraine headaches. (Tr. 23-26.) Although an ALJ may use "inconsistent objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (emphasis added) (cleaned up); *see Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."). Thus, the ALJ must provide specific, clear, and convincing reasons backed by substantial evidence that explain why the medical evidence is inconsistent with the claimant's subjective symptom testimony. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-38, 1040 (9th Cir. 2007).

Here, the ALJ failed to do so in two ways. First, the ALJ provided a summary of medical evidence that she found undermined plaintiff's claims of impairment but focused on the evidence supporting her conclusion even when evidence to the contrary appears on the same pages of the treatment notes on which the ALJ relied. An ALJ may not "cherry pick" evidence without considering its context in the record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)

(holding ALJ may not "cherry pick" evidence that disfavors disability without considering its context in record); *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014) (ALJ may not "cherry-pick" from mixed results to support a denial). Second, the ALJ cited various parts of the medical record, but did not provide an explanation supporting her conclusions, and thus failed to identify what testimony of plaintiff is undermined by what parts of the record. *Brown-Hunter*, 806 F.3d at 494.

### a.  Migraines

The ALJ acknowledged plaintiff's testimony about her migraine headaches that prevent her from working. (Tr. 25.) To undermine this testimony, the ALJ cited instances where plaintiff's "multiple head images[] have been unremarkable" or that her brain imaging "found no significant abnormality." (Tr. 25, citing Tr. 881, 662, 1530, 1604.) Yet the ALJ did not grapple with the fact that normal brain imaging is consistent with a primary headache disorder diagnosis. Social Security Ruling (SSR) 19-4p, *available at* 2019 WL 4169635 (Aug. 26, 2019). SSR 19-4p states that physicians may conduct imaging scans such as MRI to "rule out other possible causes of headaches - such as a tumor." In other words, a normal MRI is entirely consistent with a migraine diagnosis. SSR 19-4p, 2019 WL 4169635; *see Cortez v. O'Malley*, No. 3:23-CV-00391-CLB, 2024 WL 982686, at *6 (D. Nev. Mar. 7, 2024) (holding that using a lack of MRI findings as objective evidence to discredit the plaintiff's symptom complaints was an error by the ALJ) (citation omitted); *see also Ha H. v. Kijakazi*, No. 20-CV-06866-KAW, 2022 WL 17968843, at *2 (N.D. Cal. Sept. 27, 2022) ("[T]he absence of MRI is insufficient because migraines are not inconsistent with normal MRI findings. MRIs are used to rule out diseases of the brain or nerves that may cause headaches or migraines, not as evidence that the headaches are nonexistent.")

(citation modified). In fact, in the same treatment notes that the ALJ uses to discuss plaintiff's "unremarkable" MRIs, her treatment providers stated that plaintiff "continues to have recurrent flare ups of symptoms, starts with stuttering speech, progresses to severe migraine headaches, left sided weakness and numbness/tingling, has also been having memory difficulties recently as well" and that she still has "[five] to [six] migraine headache[s] per month." (Tr. 25, citing Tr. 881, 1530.)

The ALJ also cited one instance of plaintiff "singing in a choir in April 2023" to discount her claims that migraines cause her to stutter. (Tr. 25, citing Tr. 1775.) But again, the ALJ failed to meaningfully connect the dots. The ALJ does not provide any analysis about how one instance of plaintiff's participation in a choir undermines her specific testimony about blurry and double vision, weakness, stuttering, or the extent of her pain stemming from her migraine headaches when they occur. (*See* Tr. 25.) To the contrary, there are several occurrences in the record demonstrating that plaintiff suffers from persistent stuttering when her migraines begin, none of which the ALJ discussed. (*See* Tr. 691 (stuttering during general exam), 698 ("[plaintiff] was not able to [speak in] full sent[e]nces, and [h]ad a hard time getting her words out, a stutter"), 704, 710, 711 ("On triage examination, patient stuttering but no other focal deficits."), 714, 716, 737, 738 ("Very difficult to understand [plaintiff] as she has a stutter.") 750, 883, 922, 939 ("her stuttering and speech delay is significant") 1276, 1287, 1291, 1298, 1305, 1444.) Lastly, the ALJ accounted for plaintiff's migraines by "limiting her to light exertional work with additional postural activity and work environment restrictions," but did not explain how those limitations directly relate to her migraines. (Tr. 25.) Therefore, the ALJ's findings are not supported by

substantial evidence, and this fails to provide a clear and convincing reason to discount her subjective symptom testimony.

### b. Carpal Tunnel Syndrome

The ALJ cited two treatment notes to undermine plaintiff's claims that her carpal tunnel syndrome limits her ability to hold objects and use her hands when working. (*See* Tr. 24, citing Tr. 1547, 1673.) The ALJ cited the first treatment note, stating an "EMG/NCV of [plaintiff]'s wrists was performed in June 2020, which found evidence of bilateral severe median neuropathy at the wrist, but no evidence of superimposed cervical radiculopathy." (Tr. 24, citing Tr. 1547.) The ALJ then cited a March 2021 physical examination showing that plaintiff was "positive for Tinel's signs bilaterally." (Tr. 24, citing Tr. 1673.) Yet the ALJ failed to discuss how those medical records undermine plaintiff's testimony about her inability to grasp objects, dropping objects, and right-hand numbness. (*See* Tr. 24.) Thus, the ALJ analysis here fails to follow the Ninth Circuit's directive. *Brown-Hunter*, 806 F.3d at 494.

### c. Musculoskeletal Impairments

The ALJ cites several treatment notes throughout the record to undermine plaintiff's testimony regarding her musculoskeletal impairments. (*See* Tr. 23-24.) Plaintiff argues that her severe neck and back pain limit her ability to stand, walk, sit, lift, carry, and bend over. (Tr. 49-50.) The ALJ stated that "[m]edical imaging of [plaintiff]'s spine does not support the severity of her alleged limitations." (Tr. 24.) After listing results from plaintiff's various MRI and CT scans, the ALJ concluded that she "accounted for [plaintiff]'s spine impairments by limiting her to light exertional work with additional postural activity, manipulative, reaching, and work environment restrictions." (Tr. 24, citing Tr. 570, 575, 1945, 2032.) But the ALJ did not analyze how any of

these scans undermine plaintiff's testimony about difficulty walking, standing, lifting, or the extent of her pain. (*See* Tr. 23-24.) This leaves the court to guess as to how the ALJ interpreted the MRI and CT scans showing that plaintiff has a "2mm diameter syrinx of the cord at C7-T1 measuring 16mm in length[,]" a "third branchial cleft cyst[,]" and "multilevel mild-moderate facet arthropathy, and mild foraminal narrowing at L4-5." (Tr. 24, citing Tr. 570, 575, 1945, 2032.) It is possible that those scans support plaintiff's testimony, but there is no way to know without an explanation by the ALJ. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). Because an explanation is lacking for how the MRI results or other records undercut plaintiff's testimony about her musculoskeletal impairments, the court cannot conclude that the ALJ's conclusion is supported by substantial evidence.

In sum, the ALJ's reasoning for discounting plaintiff's subjective complaints of migraine headaches, carpal tunnel syndrome, or musculoskeletal impairments is not supported by substantial evidence. And it is unclear how the ALJ's cited medical records conflict with plaintiff's testimony such as her inability to grasp objects or get out of bed for "two to three days" when a migraine begins, her left arm and right-hand weakness, stuttering, and numbness in her dominant hand because the ALJ did not articulate which testimony was not credible and which "particular parts of the record support[ that] non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to provide such clear analysis is error, and the court therefore concludes that this rationale does not rise to a specific, clear, and convincing reason for

discounting plaintiff's symptom testimony. On remand, the ALJ must be more explicit about what testimony is being discounted and why.

###    2.    Improvement with Treatment

The ALJ also relied on records showing plaintiff's symptoms improved with treatment when concluding that her symptom testimony overstated her limitations. An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (noting "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

The ALJ's reasoning that plaintiff's migraine headache and bilateral carpal tunnel syndrome limitations improved with treatment falls short of clear and convincing. Even though evidence that treatment improves a claimant's symptoms can be a clear and convincing reason for discounting a plaintiff's symptom testimony, *Wellington*, 878 F.3d at 876, an ALJ must view it in context, "with an understanding of the patient's overall well-being and the nature of her symptoms," *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). The ALJ mischaracterized the record as to what is effective in relieving plaintiff's migraine headache symptoms, as well as overstating the "dramatic improvement" of her carpal tunnel release procedures. (Tr. 24.)

First, the ALJ cited treatment notes indicating that "darkness and prescription medications (Aimovig, propranolol, gabapentin, and sumatriptan) are effective in relieving her symptoms." (Tr. 25., citing Tr. 882, 1713.) However, the August 2020 treatment note cited by the ALJ describes that plaintiff's migraine was so severe that she required emergency intervention. (Tr. 1713 ("[S]he was at dinner with her husband . . . when she developed acute onset severe LEFT cervico-occipital headache and associated stuttering, characteristic of her typical migraines but more severe and with new features of LEFT frontal/retroorbital pain. []She took her migraine abortant, sumatriptan, without improvement leading to her presentation to the ED.").) And though the ALJ mentions this emergency department visit, she states that plaintiff's migraine symptoms improved with a "migraine cocktail." (Tr. 25, citing Tr. 1719.) But it is unreasonable to conclude that a migraine cocktail given to plaintiff at the emergency department is an effective everyday treatment. The ALJ relies heavily on the effectiveness of plaintiff's prescription medication Aimovig to undercut her testimony regarding her migraines, yet her treatment notes indicate only some improvement of her migraines, reducing them to "[three]-[four times] a month" and that "she is stable with [two] migraine episode[s] per week on Aimovig 140 mg monthly." (Tr. 25, citing Tr. 1618, 1648.) Thus, the ALJ's findings are not fully supported by substantial evidence. A careful review of the record reveals that plaintiff's medications lessen the number of migraines she gets per month, but that she still has two migraines per week—a level that may cause plaintiff to be absent at a level that precludes competitive employment. (*See* Tr. 62 ("One day a month would probably be tolerated but not particularly liked, but anything in excess of that would, on a more probable than not basis, lead to termination of employment.").)

Second, the ALJ cited plaintiff's three carpal tunnel release surgeries to discount her testimony regarding her symptoms stemming from carpal tunnel syndrome. Plaintiff testified that because of her carpal tunnel syndrome, she has limited use of her hands and can hardly hold on to objects. (*See* Tr. 50.) In turn, the ALJ cited all three of plaintiff's carpal tunnel release surgeries but concluded that because she had "significant and dramatic improvement in her left-sided symptoms after the surgery[,]" that limiting her to "light exertional work" with general manipulative restrictions fully accounted for her carpal tunnel syndrome. The court is not convinced. Though plaintiff may have experienced improvement in her left wrist from the release surgery, the record demonstrates that she still has unimproved symptoms on the right wrist and hand, which is her dominant side. (Tr. 45.) For example, the ALJ cited two physical examinations from August and October of 2022 to show "normal muscle strength and range of motion." (TR. 1566.) But the first of these exams reveals that plaintiff had "sensation grossly intact to tight touch throughout and to pinpoint sensation throughout, except dulled to right digit." (*Id*.) The second physical examination is from a spine clinic visit where her provider noted "pain radiating down to right posterior wrist. Chronic numbness in hands improved on left with [carpal tunnel release] last year, but still present on right to digits [one to two]. Difficulty tying shoes sometimes because of chronic hand numbness." (Tr. 1611.) In short, the record demonstrates that plaintiff's symptoms from carpal tunnel syndrome are still present on her dominant hand and wrist and have not dramatically improved as the ALJ stated in her decision. (Tr. 24-25.) Thus, the ALJ's findings are not backed by substantial evidence, particularly regarding her claimed inability to use her hands due to grip strength and numbness. (Tr. 24-25, 45.)

Page 12 – OPINION AND ORDER
*Jennifer D. v. Comm'r Soc. Sec. Admin.*, 3:24-cv-01659-AR

In short, the ALJ's finding that plaintiff's migraine and carpal tunnel limitations improved with treatment is not supported by substantial evidence in the record as a whole, and this rationale fails to provide a specific, clear, and convincing reason to reject plaintiff's subjective symptom testimony. On remand, the ALJ must reconsider plaintiff's symptom claims, particularly as they relate to her migraines and the effectiveness of her treatment plan, and as they pertain to her dominant hand and her ability to manipulate and grasp objects.

**B.    *Medical Opinion Evidence***

Plaintiff challenges the ALJ's consideration of the medical opinion of Cara Barber, M.D. The regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2).

On June 18, 2022, Dr. Barber performed a consultative examination of plaintiff. (Tr. 1413-1424.) Dr. Barber stated that plaintiff could sit, stand, and walk six to eight hours in an eight-hour workday. (Tr. 1422.) Dr. Barber also stated that plaintiff can lift and carry five pounds frequently and 10 pounds occasionally. (Tr. 1422.) Dr. Barber also opined that plaintiff would have "occasional" reaching, handling, feeling, and grasping limitations, noting decreased right-

hand sensation. (Tr. 1422.) Regarding plaintiff's vision, Dr. Barber noted "poor vision, due to tumor in brain" and that plaintiff's communication was "slow" and that she seems to "forget easily." (Tr. 1422.)

The ALJ found Dr. Barber's opinion unpersuasive because her opinion was "not supported by her examination report." (Tr. 29.) The ALJ stated "[f]or example, the doctor found [plaintiff] had [five out of five] muscle strength in her extremities." (Tr. 29, citing Tr. 1418.) The ALJ also cited Dr. Barber's observation that plaintiff "had no problems climbing on and off the examination table, she could squat and rise with ease, and she could grasp and manipulate small and large objects without difficulty." (Tr. 29, citing Tr. 1419.) The ALJ also found Dr. Barber's opinion to be inconsistent with the evidence, citing an instance where plaintiff did a lot of "lifting and twisting" and also cited her 2023 MRI results showing "multilevel mild-moderate facet arthropathy, and mild foraminal narrowing at L4-5." (Tr. 29, citing Tr. 1867, 2032.) Lastly, the ALJ cited several times when plaintiff demonstrated normal gait and station, had normal muscle strength and normal range of motion in her extremities. (Tr. 29, citing Tr. 1174, 1232, 1237, 1457, 1545, 1566, 1613, 1672, 1710, 1815, 2014.) The ALJ's conclusions are neither explained nor supported by substantial evidence.

Here, the ALJ provided two conclusory reasons for finding Dr. Barber's opinion unpersuasive. First, the ALJ did not build an accurate and logical bridge from the evidence to her conclusion regarding the supportability of Dr. Barber's opinion so that this court can meaningfully review her conclusion. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). As discussed, the ALJ cited Dr. Barber's observations that plaintiff had five out of five muscle strength in her extremities, could climb on and off the examination table, and could manipulate

objects without difficulty but failed to analyze how those observations are inconsistent with Dr.

Barber's opinion that plaintiff could work at the sedentary level. Moreover, the ALJ failed to

grapple with Dr. Barber's observations that plaintiff had no sensation in her "right thumb to the

third digit" or that her "straight leg test was positive bilaterally[,]" which may have supported Dr.

Barber's conclusion that plaintiff could only occasionally reach, handle, feel, and grasp and lift

or carry at the sedentary exertional level. (Tr. 1418; *see* 20 C.F.R. § 1567(a) ("[sedentary work]

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like

docket files, ledges, and small tools")) But there is no way to know without a full explanation by

the ALJ, as the court can only review the reasons the ALJ asserts, not the reasons the ALJ could

have given. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to

review the reasons the ALJ asserts."); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001)

("[W]e cannot affirm the decision of any agency on a ground that the agency did not invoke in

making its decision.").

Second, the ALJ cited several treatment notes from the record to support her conclusion

that Dr. Barber's opinion was inconsistent with the record but again provides no accompanying

explanation. *See Lambert*, 980 F.3d at 1277. As discussed, the ALJ cited records that show

plaintiff "lifting and twisting[,]" her 2023 MRI results, and several observances of her normal

gait, muscle strength and range of motion. (*See* Tr. 29.) The treatment note discussing plaintiff

"lifting and twisting," however, occurred once and her treatment provider explained that her pain

"radiated to the left calf, left foot and left thigh" as a result of "daily activities and lifting." (Tr.

1867.) Absent an accompanying explanation by the ALJ, the court cannot distinguish how one

treatment note discussing plaintiff "lifting and twisting" or how one citation to plaintiff's 2023

MRI results demonstrates inconsistency with Dr. Barber's opinion. (*See* Tr. 29, citing Tr. 2032.) Further, the ALJ's citation to various observations in the record of plaintiff's normal gait and range of motion absent an explanation is not illuminating either. If anything, this section of the ALJ's decision makes it unclear how she evaluated Dr. Barber's medical opinion for consistency and supportability. (*See* 20 C.F.R. § 416.920c(b) (explaining that ALJ must "articulate . . . how persuasive [she] find[s] all of the medical opinions" from each source, and "explain how [she] considered the supportability and consistency factors").)

Therefore, the ALJ's rationale for finding Dr. Barber's opinion unpersuasive is not supported by substantial evidence and the ALJ has erred. *See Ghanim*, 763 F.3d at 1160-61; *Garrison*, 759 F.3d at 1012-13 (holding an ALJ errs when rejecting a medical opinion by "criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"). The ALJ failed to accurately and logically connect evidence to her conclusions. Therefore, the ALJ therefore failed to "provide sufficient reasoning that allows [for] review." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit holds the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The reasoning offered by the ALJ for the court's review is incomplete, rendering effective review impossible. Again, this favors remand.

**D.    *Remedy***

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d

1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Remand for further administrative proceedings is necessary here. The ALJ failed to properly consider the extent to which plaintiff's symptoms limit her ability to work. The ALJ concluded, absent explanation, that Dr. Barber's medical opinion was unsupported and inconsistent with the record. (*See* Tr. 29.) The ALJ discounted plaintiff's symptom testimony due to inconsistency with objective medical evidence and improvement with treatment, but the record demonstrates that improvement in plaintiff's symptoms was much more limited or mischaracterized by the ALJ. The ALJ appears not to have properly considered the entire record, cherry-picked examples of plaintiff's "improvement" or normal functionality and erroneously concluded that her symptoms were less limiting than alleged. (*See* Tr. 23-26.) Those errors may have affected the remaining steps and issues concerning the ultimate determination of plaintiff's disability remain unresolved. *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that

must be resolved before a determination of disability can be made[.]"). The errors here are not "inconsequential to the ultimate nondisability determination." *Treichler*, 775 F.3d at 1099.

On remand, the ALJ will reevaluate plaintiff's alleged symptoms and incorporate that testimony into the RFC, or provide with clear and convincing reasons why that testimony is rejected. The ALJ will also reevaluate Dr. Barber's medical opinion and incorporate it into the RFC, or provide substantial evidence with an explanation for why she rejected that opinion. As warranted, the ALJ will reevaluate plaintiff's RFC, obtain any supplemental VE evidence, and conduct any other reasonable measures necessary. *Garrison*, 759 F.3d at 1019 (stating that remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding").

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for further administrative proceedings.

ORDERED: September 23, 2025.

_____
JEFF ARMISTEAD
United States Magistrate Judge